# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

CYRUS DANDRIDGE,

    Plaintiff,

v.                                                    Case No. 8:21-cv-400-KKM-TGW

SHERWIN WILLIAMS, INC.,

    Defendant.
_____/

## **ORDER**

This matter is before the Court on Defendant The Sherwin Williams Company's (Sherman Williams) motion to dismiss or, in the alternative, to stay this action and compel arbitration (Doc. 7); Plaintiff Cyrus Dandridge's response in opposition to Sherwin Williams's motion (Doc. 11); and Sherwin Williams's reply to Dandridge's response in opposition (Doc. 15). After review of the parties' briefs and the arbitration agreement, the Court is satisfied that a valid and enforceable agreement to arbitrate exists and that Dandridge's claims in this case are subject to binding arbitration under the Federal Arbitration Act. *See* 9 U.S.C. § 3.

### I.    **Legal Standard**

Arbitration agreements are governed by the Federal Arbitration Act (FAA), which establishes a national policy favoring the resolution of disputes by arbitration when the parties have contracted for that kind of dispute resolution. *Preston v. Ferrer*,

552 U.S. 346, 349 (2008). Section two of the FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section four of the FAA allows a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under written agreement" to petition a district court "for an order directing that such arbitration proceed in the manner provided for" in the agreement, and Section three requires courts to stay litigation of the arbitral claims pending the arbitration of those claims "in accordance with the terms of the agreement." §§ 3 & 4.

As an initial matter, the Court must determine the threshold issue of whether a valid arbitration agreement exists between the parties, which is "simply a matter of contract." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017); *see First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."); *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004) (explaining that the district court must engage in a two-step inquiry when analyzing a motion to compel arbitration: (1) determine if the parties agreed to arbitrate the dispute and (2) decide whether "legal constraints external to the parties' agreement foreclosed arbitration"). And "just as state law generally governs whether an enforceable contract exists, state

law generally governs whether an enforceable agreement to arbitrate exists as well."[1] *Burch*, 861 F.3d at 1346 (quotation omitted); *First Options of Chi., Inc.*, 514 U.S. at 944 (explaining that when deciding whether the parties agreed to arbitrate, courts generally apply ordinary state-law principles that govern the formation of contracts). If, under a "summary judgment-like standard," a district court "concludes that there is no genuine dispute as to any material fact concerning the formation of such an agreement, it may conclude as a matter of law that the parties did or did not enter into the arbitration agreement." *Burch*, 861 F.3d at 1346 (quotation omitted). Conclusory allegations that are void of specific, supporting facts lack probative value for a party opposing summary judgment. *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (explaining that a "dispute is not genuine if it is unsupported by the evidence or is created by evidence that is merely colorable or not significantly probative") (quotation omitted).

---

[1] The arbitration agreement at issue (the EDMAP) contains a "Governing Law" provision that states that the "policy and arbitrations thereunder shall be subject to interpretation and enforcement under the Federal Arbitration Act, 9 U.S.C. Sections 1-16, when applicable, or, otherwise, under the arbitration law of the State of Ohio without regard to its conflict to laws provisions." (Doc. 7, Exhibit A at 7). Because the provision provides that the FAA or Ohio State law applies with respect to only the interpretation and enforcement of the arbitration agreement, the Court applies the ordinary Florida state law principles of contract formation to determine whether, as an initial matter, an arbitration agreement exists between the parties.

Additionally, although Dandridge cites the United States Code—including the Electronic Signatures in Global and National Commerce Act and the Uniform Electronic Transactions Act, *see* (Doc. 11 at 7–8)—in his response, he provides no authority for why those provisions should govern at this stage where state law generally controls whether an enforceable contract exists. *See Burch*, 861 F.3d at 1346.

## II. Analysis

In late 2015, Dandridge began working for Sherman Williams in its sales department. (Doc 1, Attachment 1 at 3). He was later promoted to store manager at Sherman Williams's Store #2964 in 2019, and Dandridge remains employed in that position. (*Id.*).

On December 15, 2020, Dandridge filed a complaint, alleging one violation of Title VII (racial discrimination) and two violations of the Florida Civil Rights Act of 1992 (hostile work environment and retaliation). (*Id.* at 7–12). After removing the case to this Court, Sherman Williams filed a motion to dismiss or, in the alternative, to stay this action and compel arbitration with a supporting memorandum of law, arguing that Dandridge twice agreed that all discrimination or retaliation disputes relating to his employment would be arbitrated under its Employment Dispute Mediation and Arbitration Policy (EDMAP) and that Dandridge should be compelled to arbitrate his claims. (Doc. 7 at 2–19). In his response in opposition to the motion, Dandridge denies that he ever entered into such an agreement and argues that Sherman Williams's arbitration policy is not binding because it lacks the elements of a valid and enforceable electronic agreement. (Doc. 11 at 2–12). Specifically, Dandridge argues that he did not electrically sign the EDMAP; that there is no evidence that shows his intent to sign or otherwise certifies his electronic signature; that no evidence exists to show that Dandridge agreed to use the electronic signature process or otherwise provided consent to do business electronically; and that Sherman Williams provides no audit of the

4

"electronic acceptance" of the arbitration agreement to satisfy the record requirement mandated by Florida law. (*Id.* at 6–12).

In its reply to Dandridge's response, Sherman Williams argues that Florida law "does not require either a certificate or public key to attribute an electronic signature to a person" (Doc. 15 at 3); that "an electronic . . . signature is attributable to a person if the record or signature was the act of the person"; and that "[t]he act of the person may be shown in any manner . . . ," Fla. Stat. § 668.50(9)(a) (2020). Sherman Williams further argues that the context and circumstances surrounding Dandridge's acceptance of employment demonstrate that Dandridge's electronic signature is attributable solely to him and that Dandridge agreed to conduct transactions with Sherman Williams by electronic means. (Doc. 15 at 3–6). The Court agrees and finds that an enforceable arbitration agreement exists between the parties.

Under Florida law, an electronic signature "means an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." Fla. Stat. § 668.50(2)(h) (2020). "An electronic record or electronic signature is attributable to a person if the record or signature was the act of the person." § 668.50(9)(a) "The act of the person may be shown *in any manner*, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable," and the effect of such a signature is "determined from the context and surrounding circumstances at the time of its creation, execution, or adoption,

including the parties' agreement, if any, and otherwise provided by law." § 668.50(9) (emphasis added). Florida law also provides that "[w]hether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct." § 668.50(5)(b).

In its motion, Sherman Williams attached the EDMAP agreement and an affidavit from a senior Sherman Williams IT analyst. (Doc. 7-1 at Exhibits 1 & A). In the affidavit, the analyst states that, as an applicant to Sherman Williams, Dandridge registered in Sherman Williams's system with his own username and password and that after applying, Dandridge received an email "with a link, which, when clicked on, opened a browser with [Dandridge's] September 11, 2015 offer letter and displayed the attachments," including the EDMAP. (*Id.* at Exhibit 1). To accept an offer of employment, Dandridge would have had to open the offer letter in an online browser, scroll to the bottom of the offer letter, click "I accept," and click "submit" to electronically sign the document. (*Id.*). The analyst states that Dandridge "electronically signed his September 11, 2015 offer letter when he accepted [Sherwin Williams's] offer of employment." (*Id.*). Sherman Williams attached Dandridge's offer letter, which states that it was electronically signed by Dandridge and includes the date and time of acceptance. (*Id.* at Exhibit C).

The analyst stated that Dandridge completed this electronic application again to accept his offer letter for his promotion to store manager and explained that as an internal employee, Dandridge had a "[s]ingle sign-on, which consists of a company e-

mail address or username assigned by IT and a personal password created by [Dandridge]." (*Id.* at Exhibit 1). Dandridge "used his unique [s]ingle sign-on username and personal password to login to Taleo, which is Sherwin-Williams' offer application system, to view his April 10, 2019 offer letter and attachments," and to electronically sign the offer letter when he accepted the promotion. Sherman Williams attached Dandridge's second offer letter, which shows that it was electronically signed by him and includes the date and time of acceptance. (*Id.* at Exhibit D). The analyst also stated that he logged onto Sherman Williams's system, "reviewed the stored electronic information in [Danridge's] 'Candidate History' tab, and confirmed that [Dandridge] accepted" both offer letters "by electronically signing the offer letters." (*Id.* at Exhibit 1). Additionally, Sherman Williams attached the emails that offered Dandridge his initial employment and promotion, and each email indicates that Dandridge electronically accepted the offers and specifies the date and time that he electronically accepted the offers. (Doc. 7 at Exhibits C & D; Doc. 15 at Exhibits 1, A & B). All the email communications listed either Dandridge's personal email address or his company email address. (Doc. 15 at Exhibits A & B). Indeed, in one email that Dandridge replied to, he stated: "I'm so excited to start and looking forward to my first day with The Sherwin Williams Company. I'll keep an eye out for your email with my location and start time." (*Id.* at Exhibit A). He signed the email: "Best Regards, Cyrus Dandridge." (*Id.*).

The offer emails plainly contain the acknowledgement that Dandridge would "accept the terms and conditions of the Problem Resolution Procedures, the Corporate

7

Employment Dispute Mediation and Arbitration Policy, as well as the other policies listed above in the enclosures," (Doc. 7 at Exhibits C & D), and the EDMAP provides that "employees shall be deemed *by virtue of the employment and as a condition of employment*, to have agreed to the fullest extent permitted by law, to resolve covered disputes through mediation and/or arbitration pursuant to this policy, and to waive any right they may have to utilize any other legal procedures for resolving disputes, including but not limited to the right to sue in court or to have a jury trial," (*id.* at Exhibit A) (emphasis added). Thus, by electronically signing the offer letters and accepting employment, Dandridge agreed to Sherwin Williams's arbitration policy through the EDMAP.

Considering the context and circumstances, *see* Fla. Stat. § 668.50(5)(b), (9)—especially that Dandridge used the electronic application process, that his acceptance of the employment (including the time and date of acceptance) was twice electronically recorded, that he communicated with Sherman Williams through email, and that Dandridge actually accepted employment with Sherman Williams—the Court finds that Dandridge consented to conduct a transaction by electronic means and that the electronic signatures on the offer letters are attributable to him. In the light of Dandridge's electronic signatures and corresponding assent to the agreement, the Court concludes that the EDMAP is an enforceable agreement between the parties. Although Dandridge summarily argues that Sherman Williams has "not sufficiently shown that [his] 'electronic acceptance'" was authentic and denies that he ever saw or reviewed the attachments to his offer letter or electronically signed the EDMAP (Doc. 11 at 6–9),

8

his allegations are conclusory and lack specific, supporting facts. *See Bazemore*, 827 F.3d at 1333. Such a blanket denial, without more, is insufficient, especially where Sherman Williams has provided evidence from which the Court can find that the electronic signatures are attributable to Dandridge.

The Court also finds that the EDMAP covers the Title VII and state law claims alleged in Dandridge's complaint. *See* (Doc. 7 at Exhibit A) (stating that the EDMAP covers "[d]isputes regarding discrimination or retaliation relating to an employee's termination or any other aspect of employment, on a basis prohibited by law, including, but not limited to, claims under Title VII . . . [and] applicable state [law]"). Accordingly, this case is subject to arbitration under the EDMAP.

Therefore, it is **ORDERED**:

1. Sherwin Williams's motion to compel arbitration (Doc. 7) is **GRANTED**. The parties shall proceed to arbitration in accordance with the terms of their arbitration agreement.

2. The proceedings are **STAYED**, and the Clerk is directed to **ADMINISTRATIVELY CLOSE** the case. The Court retains jurisdiction of the case to adjudicate any post-arbitration motions the parties may make.

3. The parties shall file a joint status report on **August 27, 2021**, and every ninety (90) days thereafter advising the Court on the progress of arbitration. The parties must immediately notify the Court upon the

9

arbitrator's resolution of the claims asserted in this case.

**ORDERED** in Tampa, Florida, on May 26, 2021.

Kathryn Kimball Mizelle
United States District Judge